UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID SHOEMAKER,

      Plaintiff,

v.                                                                    Case No. 11-15135
                                                                      Hon. Lawrence P. Zatkoff

CITY OF HOWELL,

      Defendant.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on November 12, 2013

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

This matter is before the Court on the parties' cross Motions for Summary Judgment [dkts 25, 26].  The Motions have been fully briefed.  For the following reasons, Plaintiff's Motion is GRANTED and Defendant's Motion is DENIED.

## II.  BACKGROUND

The City of Howell, Michigan ("the City") enacted a version of City Ordinance §622.02 ("the Ordinance") over 50 years ago.  The Ordinance currently requires the City's owners or occupants of land to maintain the grassy area between the sidewalk and the street curb so that grass, weeds, and other vegetation do not grow in excess of eight inches.  The Ordinance states:

> a) Cutting and Removal. No owner, lessee or occupant, or any agent, servant,
> representative or employee of such owner, lessee or occupant, having control of
> any occupied or unoccupied lot or land or any part thereof in the City, shall permit
> or maintain on any such lot or land, or on or along the sidewalk, street or alley
> adjacent to the same between the property line and the curb, or between the

property line and the middle of the alley up to twenty feet outside the property line if there is no curb, any growth of weeds, grass or other rank vegetation to a greater height than eight inches on the average, or any accumulation of dead weeds, grass or brush. . . . No person shall neglect to cut, remove or destroy weeds, grass or other vegetation as directed in this section, or fail, neglect or refuse to comply with the provisions of any notice herein provided for or violate any of the provisions in this section, or resist or obstruct the City Manager or his or her authorized agent in the cutting and removal of weeds, grass and other vegetation.

Ordinance § 622.02(a).

If the homeowner fails to mow this area, the Ordinance provides:

d) Noncompliance; Remedy of the City. If the provisions of the foregoing subsections are not complied with, the City Manager or his or her duly authorized representative shall serve notice upon the owner, lessee or occupant or any person having the care or control of any such lot or land to comply with the provisions of this section. Such notice shall be given verbally to any of such persons or in writing. If in writing, it shall be sent first class mail to the owner of record of the lot or land in question. . . . If the person upon whom the notice is served fails, neglects or refuses to cut, remove or destroy, or to cause to be cut, removed or destroyed, such weeds, grass or other vegetation within five business days from the date of such notice. . . . the City Manager shall cause such weeds, grass and other vegetation to be removed or destroyed and the actual cost of such cutting, removal or destruction, plus and administrative fee of seventy-five dollars ($75.00) for inspection and other additional costs in connection therewith, shall be certified to by the City Manager or his or her duly authorized representative and shall become and be a lien upon the property on which such weeds, grass and other vegetation were located. A statement for such actual costs plus administrative fee shall thereupon be sent by first class mail to the property owner . . . Should the obligation as described by this statement remain unpaid after forty-five days from the date of the statement, the City Manager or his or her representative may then certify the delinquent amount, after first adding a penalty of ten percent, to the Assessor. At the discretion of the City Manager, this amount shall either be incorporated into a special assessment roll, to be processed in the manner prescribed by the City Charter and ordinances of the City, or shall be entered upon the next tax roll as a charge against such premises and be collected and the lien thereof enforced in the same manner as general City taxes against such premises are collected and liens enforced. In general, the decision as to whether the obligation shall be made a part of a special assessment roll or

2

certified directly to the assessing officer for collection as a City tax shall depend
upon the number and magnitude of such outstanding delinquent statements.

Ordinance §622.02(d).

The instant case centers on whether the Ordinance is constitutionally valid.

---

David Shoemaker ("Plaintiff") owned his home at 121 S. Elm, at the corner of S. Elm
and E. Sibley in the City of Howell, Michigan ("the City") for some nine years.  For most of this
time, he was under the impression that he owned the property right to the street.  Based on this
impression, Plaintiff had customarily mown the grass between the sidewalk and the street; he and
his daughter even planted a five-foot high red maple tree in that area.

In or around 2009, the City was repaving and upgrading E. Sibley Street as part of a city-
wide road refurbishment program.  On Sibley, the City reworked the road by pulling up the
gutters, expanding the width of the area between the sidewalk and the street, adding a new lower
curb, and paving the crosswalk with brickwork.  While performing this work, the City removed
the red maple tree Plaintiff and his daughter had planted between the sidewalk and the street on
Sibley, in order to replace it with nine saplings (along with their supporting wiring that Plaintiff

compares to "guide wires").[1]   At that time, Plaintiff was told by officials from the City that the property between the sidewalk and the street belonged to the City.[2]

Since he had been told that he did not own the property and could not control what was planted in it, Plaintiff has refused to maintain the grass and nine trees the City planted on the expanded space it created.

The City sent Plaintiff a notice on August 9, 2011, demanding that he mow the City's property between the sidewalk and the curb by August 16, 2011.  The notice does not state how to request a hearing on the matter.  The City's Code Enforcement Officer, Jack Donahue ("Donahue"), testified in his deposition that this is a standard form he uses for all such notifications; while he has made other adjustments to the form, no one has involved Donahue in any discussions of adding to the form any language about opportunities for hearings.



[1] This picture depicts the area between the sidewalk and the curb after renovations that the City required Plaintiff to maintain.  The Court finds that the manner in which the City rearranged the area—with nine trees and supporting guide wires—makes it nearly impossible to maintain the grass.
[2] Although ownership of the area between the sidewalk and the curb was previously in question, the City now does not contest that it owns the property at issue in this case.

4

According to Donahue, because Plaintiff refused to comply with the notice by August 17, 2011, he ordered the City's contractor to mow it.  On August 18, Donahue stopped by Plaintiff's home to discover the area between the sidewalk and curb was still unmaintained.  Donahue left a door hanger with a final warning to cut the area. While the lower right-hand corner of the hanger had a phone number on it, nothing on it advised Plaintiff of any hearing or appeal rights.

Plaintiff later spoke with Donahue by telephone, at which time both agree that Plaintiff objected to his mowing of the City's land and that Donahue told Plaintiff the Ordinance required him to do so.  Although accounts differ as to the exact content of the conversation, it is uncontested that Plaintiff asked Donahue to issue Plaintiff a ticket.  Instead of ticketing Plaintiff, Donahue and the City had its contractor—Shaner's Cutting Edge ("Shaner's")[3]— mow the area. The City sent Plaintiff an invoice for $150.00 ($75.00 for the contractor plus a $75.00 "administrative fee").   The City enforced the Ordinance against Plaintiff—using the same procedure—three more times.  When Plaintiff refused to pay the resulting $600 in fees, the City placed the amount on Plaintiff's tax roll.  Plaintiff was forced to pay this amount prior to selling his home in 2012.

On November 21, 2011, Plaintiff filed his Complaint in this Court, alleging violations of the Substantive Due Process Clause (Count I); the Procedural Due Process Clause (Count II); the Equal Protection Clause (Count III); and the Fourth Amendment (Count IV).   The parties stipulated to dismiss Counts III and IV, and have filed the instant cross Motions for Summary Judgment on Counts I and II.

---

[3] Shaner's was a co-defendant in this case originally, but was dismissed upon the parties' stipulation on March 28, 2013.  See Dkt. 11.

### III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325).

Once the moving party has met its burden of production, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

# IV. ANALYSIS

## A. PROCEDURAL DUE PROCESS

Plaintiff asserts a procedural Due Process claim under 28 U.S.C. § 1983 ("§1983").

Specifically, Plaintiff claims that the City's Ordinance failed to provide the required process by:

(1) Failing to provide Plaintiff with sufficient procedural Due Process protections in a predeprivation or postdeprivation hearing after the imposition of the Ordinance to challenge the deprivation of his property rights required under the 14th Amendment;
(2) Failing to provide Plaintiff with adequate notice of any predeprivation or postdeprivation hearing as required under the 14th Amendment; and
(3) Failing to provide Plaintiff a meaningful predeprivation or postdeprivation hearing before an unbiased panel as required under the 14th Amendment.

The Court addresses each argument in turn.

**I. The City failed to provide Plaintiff with sufficient procedural due process protections in a predeprivation or postdeprivation hearing after the imposition of the Ordinance to challenge the deprivation of his property rights required under the 14th Amendment.**

### A. Legal Standard

In determining whether a violation of procedural Due Process has occurred, a court must first determine whether the "right" at stake is within the protection of the 14th Amendment. *Hamilton v. Meyers*, 281 F.3d 520, 529 (6th Cir. 2002). A court must look at independent sources of law—rather than the Constitution—to determine whether the alleged right in property is actually recognized. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 504, 577 (1972) ("Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules.").

Once a property right is established, an analysis of the governmental and private interests at stake is in order. *Mathews v. Eldridge*, 434 U.S. 319, 334 (1976). There is no one set procedure required under the 14th Amendment; rather, the concept of due process is a flexible

7

one designed to be analyzed under the specific situation in which an issue arises. *Id.* The Supreme Court has illuminated three broad areas of analysis a court's review must contain in testing the validity of the process at issue: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 434 U.S. at 335.

Finally, §1983 is not itself a source of substantive rights, but rather provides a right of action for the vindication of independent constitutional guarantees. *See Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990). "A §1983 plaintiff may prevail on a procedural due process claim by either (1) demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him of property pursuant to a 'random and unauthorized act' *and* that available state remedies would not adequately compensate for the loss." *Macene v. MJW, Inc.* 951 F.2d 700, 706 (6th Cir. 1991).

B. Analysis

In this case, Plaintiff must first establish that he has a property interest at stake protected by the 14th Amendment. The Supreme Court has long recognized money is a property right protected by procedural Due Process. *See, e.g., Roth*, 408 U.S. at 571–72 ("The Court has also made clear that the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money."). In relying on the Supreme Court's decision, the Michigan Supreme Court has established that such a protected property right in

8

money exists in the State of Michigan.  *See, e.g., City of Kentwood v. Estate of Sommerdyke*, 458 Mich. 642, 689 (1998); *Dow v. State*, 396 Mich. 192, 203–204 (1976).  The Court thus finds that Plaintiff does have a cognizable property interest in money deserving of procedural Due Process protections.

The Court must next determine whether the procedure provided to the Plaintiff by the City survives the three-part test set out by the Supreme Court in *Mathews, supra*.  Plaintiff claims that the private interest at stake—the $600 the City placed on his tax roll—warrants procedural Due Process protections.  The City does not dispute Plaintiff's interest, asserting only that such an interest is minimal and thus warrants only minimal procedural Due Process protections.  The City maintains that there is an appeal or hearing process concerning the Ordinance, and that the protections created through its practices provide Plaintiff with adequate procedural protections.

The Court finds, however, that the City's alleged "process" fails to provide any legitimate protection of Plaintiff's property interest.  The Ordinance clearly states that if a citizen fails to maintain the City's property as ordered, the City can simply have a contractor do it and charge the citizen both the contractor's charge and an administrative fee.  The Ordinance is devoid of any mechanism by which a citizen may invoke to seek a hearing before a court or a quasi-judicial board on any issue.  While the City maintains that the Plaintiff may "challenge" the City's determination of vegetation height or whether the Ordinance applies to a particular type of vegetation, it cannot point to any valid means by which Plaintiff may challenge whether he must maintain the City's property at all.

Further, the "process" through which the City maintains Plaintiff may "challenge" the Ordinance is a vague and completely disorganized system.  The City readily admits the process

is not written down.  Instead, the City asserts that the phone calls placed by the Plaintiff to Donahue serve as the "hearing" Plaintiff is entitled to.  The City also claims that City Manager Shea Charles ("Charles")—Donahue's direct supervisor—would have "heard" Plaintiff's complaints, along with Interim Community Development Director Erin Perdu ("Perdu") or the City Council.  There is nothing in the record to indicate that Plaintiff was ever made aware that his phone call to Donahue constituted a hearing, or that Donahue informed Plaintiff of his ability to call Charles or Perdu.  In fact, it appears that Charles and Perdu have never spoken with the Plaintiff.  It also appears that, even with knowledge of this "telephone appeals" system, such process would have been futile: Charles stated at his deposition that the City would never waive the requirement that a citizen mow the City's property between the sidewalk and the street.

The Court finds that this "process" creates a great risk of improper deprivation of Plaintiff's property interest at stake.  Plaintiff's right to appeal his deprivation has a dangerously high chance of being ignored or lost in the shuffle and confusion that clearly exist with the City's current "process".  Additionally, the Court finds that having actual predeprivation hearings before imposing fees would provide substantial value by creating a process to determine such issues as whether the Ordinance is being validly applied, whether the City's plantings are reasonable, whether a citizen should have control of what he is being asked to maintain, and whether the fees imposed by the Ordinance are reasonable.  While the City argues that such process is irrelevant in this instance because Plaintiff's claim would not have survived under *any* type of hearing, this is a misstatement of law the Court refuses to adopt.  *See Zinermon v. Burch,* 494 U.S. 113, 125-26 n. 11 ("deprivation of procedural due process is actionable under §1983 without regard to whether the same deprivation would have taken place even in the presence of proper procedural safeguards.").

10

The City asserts that it has an interest in keeping administrative costs low while quickly dealing with perceived nuisances.  The City further advances that requiring it to create and maintain additional procedural safeguards would unduly burden the City's limited resources while creating unnecessary administrative duties.

The Court is not convinced.  While it is undoubtedly more cost-effective to have the completely inadequate "telephone appeals process" the City now maintains, 14th Amendment requires more.  The City cannot simply shirk its constitutional responsibilities because of an unwillingness to pay for them.

Additionally, the Court agrees with the Plaintiff's assertion that the City may be able to provide adequate procedural Due Process protections at no cost by simply issuing an alleged offender of the Ordinance a ticket.  With this ticket in hand, both parties admit that such an offender could challenge the ticket in a local district court.  The printing and writing of such tickets do not "unduly burden" the City's administrative function, and may be able to provide the constitutional procedural Due Process protections the City's current "process" now lacks.

Finally, it is clear to the Court that the City's interest is broader than the administrative costs associated with any meaningful predeprivation hearing.  The City also has a clear interest in maintaining a system of mandated free maintenance of its property.  The current system requires private citizens to maintain the City's property, necessitating private citizens purchase resources—like the City's water—which also benefit the City.

The Court finds that such an interest cannot in this instance stand superior to the Plaintiff's right to procedural Due Process.  The Plaintiff has demonstrated that he has been deprived of a protected property interest as a result of established City procedure.  Plaintiff has further proven—and Defendant has failed to rebuke— that the City's procedure itself violates his

11

due process rights.  As such, Plaintiff need not address whether his deprivation was the result of "random and unauthorized" state action.

**II. The City failed to provide Plaintiff with adequate notice of any predeprivation or postdeprivation hearing as required under the 14th Amendment.**

The 14th Amendment's procedural Due Process protections provide that, prior to the deprivation of an interest, notice must be given to any individual that stands to have their interest deprived.  *See, e.g., Mullane v. Central Hanover Bank & Trust Co.* 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (internal citations omitted)).  This notice must reasonably convey information pertaining to the deprivation and must provide for ways in which an individual may appear or challenge such a deprivation.  *Mullane*, 339 U.S. at 314 ("This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appeal or default, acquiesce or contest.").

Plaintiff claims that the City never provided him with notice—written or otherwise—of any predeprivation or postdeprivation hearing.  Indeed, there is no description of any hearing process in the Ordinance.  There is no notice of any type of contestation or appeal procedure in the letters or door hangers the City gave Plaintiff.  The only evidence in the record of any type of "notice" is the City's claim that various City officials may have told Plaintiff of an "informal hearing" process by which Plaintiff could have brought his complaints to Donahue, Charles, Perdu or the City Council.  The City asserts that Plaintiff—by receiving notice of his alleged violations of the Ordinance—was given all the notice he deserved.  The City also advances that

Plaintiff should be presumed to know the requirements of the law, and thus should be presumed to have notice of the Ordinance.

Mere notice of an impending deprivation alone, however, does not satisfy the notice requirements of procedural Due Process.  Such notice must also provide the way this deprivation will occur and the means by which the deprivation may be contested.  Even if the Court assumes Plaintiff was told by various City officials of an "informal hearing" process, the Supreme Court has already rejected this sort of "word of mouth" referral system as an invalid means of providing notice under procedural Due Process.  *See Memphis Light, Gas & Water Div. Craft*, 436 U.S. 1, 14–16 (1976).

The Court thus finds that the City failed to satisfy the notice requirements of procedural Due Process.

**III. The City failed to provide Plaintiff with a meaningful predeprivation or postdeprivation hearing before an unbiased panel as required under the 14th Amendment.**

The Supreme Court has long warned that a "hearing" before a person who is actually or likely to be biased is not constitutionally permissible. Thus, a meaningful hearing cannot be offered by having the person who made the initial decision "review" his or her own decision. *See, e.g., Goldberg v. Kelly*, 397 U.S. 254, 271 (1970) ("Prior involvement in some aspects of a case will not necessarily bar [someone] from acting as a decision maker.  He should not, however, have participated in making the determination under the review.");  *Morrissey v. Brewer*, 408 U.S. 471, 485–486 (1972).  More fundamentally, however, a meaningful hearing cannot be held before a person who has both adjudicative and executive functions.  *Hammond v. Baldwin*, 866 F.2d 172, 177 (6th Cir. 1989)

The City claims Plaintiff was provided with a meaningful hearing by having the chance to bring his complaints about the Ordinance to Donahue, Charles, Perdu, or the City Council.

The Court fails to see how this provides Plaintiff with a meaningful hearing before an unbiased panel.  In speaking with Donahue, Plaintiff is forced to ask the person who made the initial contentious pronouncement to review his own decision.  Donahue holds—as do Charles and Perdu—an executive position with the City.  The role of such executive positions is to implement the City Council's will.  Thus, the City's "neutral hearing process" requires Plaintiff to either challenge the Ordinance before the body that passed it or with officials charged to enforce it.  This procedure cannot be construed to provide Plaintiff with a "hearing" before a neutral panel.  Thus, the Court finds that the City failed to provide Plaintiff with a meaningful predeprivation or postdeprivation hearing as required under the 14th Amendment.

### IV. Conclusion

The City states that "the essential requirements of due process . . . are notice and an opportunity to respond."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).  The Court finds that, despite this correct assertion, the City has failed to afford Plaintiff either.  The City's "process" of random and confused phone call "hearings"—which could never result in a finding in Plaintiff's favor—does not begin to reach the level of process required under the 14th Amendment.  Additionally, the City failed to give the Plaintiff adequate notice that this deficient appeals process even existed.  Finally, the City failed to divest from the appeals process those in charge of enforcing and creating the Ordinance.  As such, the Court finds that the deprivation of Plaintiff's property rights by the City under the Ordinance violated Plaintiff's procedural Due Process rights.

### B.  SUBSTANTIVE DUE PROCESS

In addition, Plaintiff argues that, by requiring citizens to maintain City property over which they have no control, without conferring any particularized benefit on the citizens, the

Ordinance violates substantive Due Process.  For the reasons stated below, the Court finds Plaintiff's argument compelling.

While a claim arising under procedural Due Process rests on the governmental process available before and after an alleged deprivation, the constitutionality of the actual deprivation via governmental action is not addressed.  *See Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992) ("The doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed has come to be known as substantive due process.").  Procedural Due Process analysis, then, does not strike at the substantive heart of the deprivation to which the Court now turns.  *See Zinermon v. Burch* 494 U.S. 113, 125 (1990) ("The Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'") (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

Substantive due process is defined generally as "[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed[.]"  *Pearson*, 961 F.2d at 1216.  When government action is challenged on substantive due process grounds, a court must first determine whether a fundamental right is implicated.  Should the interest presented be found "fundamental," deprivation of such an interest will be analyzed under strict scrutiny.  *Reno v. Flores*, 507 U.S. 292, 301–302 (1993).  If the right is not fundamental, however, the court must apply a "rational basis" review.  *See, e.g.*, *Seal v. Morgan*, 229 F.3d 567, 575 (6th Cir. 2000) ("Government actions that do not affect fundamental rights or liberty interests . . . will be upheld if it they are rationally related to a legitimate state interest.").

**I.  The Ordinance is not narrowly tailored to achieve a compelling state interest, and thus unconstitutionally infringes Plaintiff's fundamental substantive due process right.**

An interest is fundamental for the purposes of substantive due process analysis if it is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it] were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–721 (1997). A long line of cases exist indicating liberties outside those specifically enumerated in the Bill of Rights that are protected under the concept of substantive due process. *Id.* Determining a particular right is "fundamental" for purposes of substantive due process relief, however, is a decision not easily made. *See Collins v. City of Harker Heights, Tex*, 503 U.S. 115, 125 (1992) ("The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field."). Indeed, "the [Supreme] Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision[-]making in this unchartered area are scarce and open-ended." *Id.* (internal citations omitted). A court must make certain to provide a "careful description" of the right claimed within its substantive due process analytical framework, so as to properly determine whether such a right is truly fundamental. *See, e.g.*, *Doe v. City of Lafayette, Ind.*, 377 F.3d 757, 769 (7th Cir. 2004) ("Our careful description of the asserted right must be one that is specific and concrete, one that avoids sweeping abstractions and generalities.") (internal quotations and citations omitted).

In carefully reviewing the information presented to the Court, Plaintiff's right upon which the Ordinance allegedly infringes cannot be adequately distilled to simply whether or not Plaintiff must mow the grass between the sidewalk and the curb. Instead, the Ordinance infringes a much more fundamental right: the right not to be forced by a municipal government to maintain municipal property. As established by both parties, whether such right is fundamental is a matter of first impression before the Court.

16

The United States is a nation built upon the foundations of personal liberty and freedom from government intrusions.  As Justice Holmes opined over a century ago, "Indeed, in a free government, almost all other rights would become worthless if the government possessed an uncontrollable power over the private fortune of every cit[i]zen." *Chicago, B. & Q.R. Co. v. City of Chicago*, 166 U.S. 226, 236 (1897).  American people have over the course of history molded and shaped a set of laws that allow the people of this country the freedom to live their lives as they see fit, safe in the knowledge that the government may act only in limited circumstances to infringe upon these freedoms.

Imposition by government body—be it municipal, state, or federal—of mandated private maintenance of public property directly contradicts the goal of limited government intervention. To be sure, such action strikes at the very heart of the freedoms and liberties the United States has come to represent.  Left unchecked, such an unheralded display of government power may fray the fabric that holds this Nation together.

The Court therefore finds that such an interest—the interest to be free from mandated private maintenance of municipal property—is exactly the sort of right that is "deeply rooted in this Nation's history and traditions."  The Ordinance thus may survive substantive due process review only if it is narrowly tailored to serve a compelling state interest.  In determining whether the Ordinance is narrowly tailored, the Court must determine whether the Ordinance is the least restrictive means of accomplishing the City's goal.  *See Johnson v. City of Cincinnati*, 310 F.3d 484, 503 (6th Cir. 2002).  Further, the Court must decide whether the City's interest in enacting the Ordinance represents a compelling government interest.  *Id.*  As discussed below, the Court finds that the Ordinance satisfies neither prong.

The actions of the City have made it clear to the Court that requiring Plaintiff to maintain the area between the sidewalk and the curb is not the least restrictive means by which the City could accomplish its goal.  By conducting the maintenance on its own—as the City admittedly did four times and tried to charge Plaintiff for—the City evidences the ease by which Plaintiff's fundamental rights could be protected.  Further, the City's interest in the matter—keeping the vegetation in the public berm under eight inches—is far from compelling.  Indeed, the City points to no emergency or dire straits that would require the infringement of Plaintiff's fundamental rights.  Instead, the City asserts that Plaintiff must maintain City property simply because of his proximately to the area and some amorphous "benefit" this City property provides Plaintiff with.   The Court finds these explanations completely lacking the compelling justifications required to warrant stripping Plaintiff of a fundamental right.

"[T]he Due Process Clause of the Fourteenth Amendment was intended to prevent [the] government 'from abusing [its] power, or employing it as an instrument of oppression.'" *Collins v. City of Harker Heights, Tex.* 503 U.S. 115, 126 (1992). The people of this Nation specifically designed a governmental system void of the ability to require the sort of action the City seeks to impose on Plaintiff.  Plaintiff's request for judicial action is based on a simple premise: he asks the Court to protect his right not to be forced by a municipal government to maintain municipal property.  The Ordinance requires that Plaintiff do just that.  As such, the Court cannot allow the City's Ordinance to stand, and finds that the Ordinance is an unconstitutional violation of Plaintiff's fundamental substantive due process rights.

### II. The Ordinance is not rationally related to a legitimate government purpose, and thus unconstitutionally infringes Plaintiff's substantive due process right.

The City contends that the right Plaintiff claims the Ordinance infringes is not fundamental, and thus the Ordinance must stand unless Plaintiff proves the Ordinance is not

rationally related to a legitimate government purpose.  Although the Court firmly believes that the right in question is fundamental for the purpose of substantive due process review, the Court will also address Plaintiff's substantive due process claim under rational basis review. As explained below, the Court finds that Plaintiff provided sufficient evidence that the Ordinance is not rationally related to a legitimate government purpose, and thus finds the Ordinance unconstitutional.

It is the plaintiff's burden to establish that the defendant's action is not rationally related to a legitimate government interest.  *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, at 1228 (6th Cir. 1997).  Rational basis review is a deferential standard under which government action is afforded a strong presumption of validity.  *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 770 (6th Cir. 2005).  The Sixth Circuit has held that "under rational basis review, . . . a purported rational basis may be based on 'rational speculation unsupported by evidence or empirical data' and need not have a foundation in the record."  *Id.* at 770 (internal citation omitted) (upholding the district court's dismissal because the defendant water district had asserted legitimate interests behind its policy); *see also 37712, Inc. v. Ohio Dep't of Liquor Control*, 113 F.3d 614, 620 (6th Cir. 1997) ("[I]f any conceivable legitimate governmental interest supports the contested ordinance, that measure is not 'arbitrary and capricious' and hence cannot offend substantive due process norms.").

In this case, the City asserts that it had a nuisance-abatement interest in ensuring that the City property adjacent to Plaintiff's property was sufficiently maintained.  Specifically, the City asserts that it may enact ordinances—under the Home Rule Cities Act and the Michigan Constitution—that seek to promote public health and otherwise advance the interests of the City.

The City further provides a list[4] of the various reasons why requiring residents in the City to abate nuisances via the Ordinance is rationally related to legitimate governmental interests, and claims that this proof provides the basis on which the Court should rule in its favor.

Plaintiff correctly points out, however, that the City's argument completely misses the issue. The issue is not whether requiring grass to be mown to eight inches or less is rationally related to a legitimate government purpose. Rather, the issue is whether it is within the power of a municipal government to force a citizen to abate a nuisance created on City property. The City merely provides the Court with the legal premise behind requiring private citizens to abate nuisances on *private* property. In fact, all of the authority Defendant relies upon[5] in coming to such a conclusion deals specifically with the abatement of nuisances created on *private* property.

Although nuisance abatement on *private* property may be a valid goal of municipal police power, that is not the issue before the Court. In this case, rather, the City has imposed costs upon the Plaintiff for Plaintiff's alleged failure to abate a nuisance on *public*, City-owned property. The Court cannot simply fit the square peg that is government-imposed maintenance of *public* property by private citizens into the round hole of legitimate reasons the City offers for abating nuisances on *private* property; the two scenarios are unalike. As such, while the City's list of potential legitimate government purposes for enforcing the Ordinance may provide ample justification for compelling private citizens to abate nuisances found on their own property, they

---

[4] These reasons are:
   1. The property owners benefit from the favorable aesthetics when the City's property is well-maintained;
   2. The City's property provides a buffer between street traffic and their property;
   3. Owners and occupants typically traverse the City's property to reach streets, sidewalks, and driveways;
   4. Maintaining the City's property helps to control pests and increases visibility for drivers;
   5. The landowners' incremental effort or expense in maintaining the City's property in conjunction with the rest of an owner's property is typically nominal, and
   6. These owners and occupants are generally in the best position to observe when maintenance is required.

[5] *See Rental Property Owners Ass'n of Kent County v. City of Grand Rapids*, 455 Mich. 246 (1997), *People v. McKendrick*, 188 Mich. App. 128 (1991).

do not advance the argument that such legitimate purposes exist for private abatement of a nuisance on public land.

The Court can perceive of no rational relationship between the interest the City has in abating nuisances on public property and the Ordinance currently in place. Although the City may wish to maintain the vegetation on plots of public property throughout the City, expecting private citizens to perform such maintenance is decidedly irrational. The same logic could lead the City to require that private citizens must water the grass on public property—using water City residents must purchase from the City—in order to avoid imposition of a fee. If the City wishes to maintain its property in accordance with its own ordinances, it must do so in the same manner in which a private citizen maintains their own property: through the volition of their own actions.

## V. CONCLUSION

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment [dkt 25] is GRANTED and Defendant's Motion for Summary Judgment [dkt 26] is DENIED.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
HON. LAWRENCE P. ZATKOFF
U.S. DISTRICT COURT

Dated:  November 12, 2013